# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| DUSTIN ALEC HAGBERG,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | CV-09-01-BLG-RFC-CSO<br><br>FINDINGS AND<br>RECOMMENDATION OF<br>UNITED STATES<br>MAGISTRATE JUDGE |

Plaintiff Dustin Alec Hagberg ("Hagberg") filed this action to obtain judicial review of Defendant Commissioner of Social Security's ("Commissioner") final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383c.

Before the Court are Hagberg's motion for summary judgment (Court's Doc. No. 17) and the Commissioner's motion for summary judgment (Court's Doc. No. 20).  Having considered the issues

-1-

presented by the parties, the Court recommends[1] granting the

Commissioner's motion, denying Hagberg's motion, and affirming the

ALJ's decision.

## I.   PROCEDURAL BACKGROUND

Hagberg filed his applications for DIB and SSI on January 28,

2005, claiming disability since March 28, 2003.  Tr. at 59-61, 132, 141.

The Social Security Administration ("SSA") denied the applications

initially and on reconsideration.  Tr. at 30-32, 51-58.  After a hearing on

February 27, 2007 (Tr. at 353-417), an administrative law judge ("ALJ")

denied Hagberg's claims.  The Appeals Council then denied Hagberg's

request for review (Tr. at 5-8), making the ALJ's decision the

Commissioner's final decision for purposes of judicial review.  20 C.F.R.

§§ 404.981, 416.1481 (2008).  Jurisdiction vests with this Court under

42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the

---

[1]By Order filed February 24, 2009, Chief Judge Cebull referred
this case to the undersigned for all pretrial proceedings (Court's Doc.
No.7) including submission of proposed findings and recommendations.

Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002)(citations and internal quotation marks omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035,1041 (9th Cir. 1995).  Substantial evidence also has been described as "more than a mere scintilla" but "less than a preponderance." Sandegathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion.  Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citation omitted).

III.    BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if:
(1) the claimant has a "medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not less than
twelve months," and (2) the impairment or impairments are of such
severity that, considering the claimant's age, education and work
experience, the claimant is not only unable to perform previous work,
but the claimant cannot "engage in any other kind of substantial
gainful work which exists in the national economy."  Schneider v.
Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42
U.S.C. §1382(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner
follows a five-step sequential evaluation process.  Corrao v. Shalala, 20
F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382C(a)(3)).

1.    The claimant must first show that he or she is not currently
      engaged in substantial gainful activity.  Id.

2.    If not so engaged, the claimant must next show that he or
      she has a severe impairment.  Id.

3. The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4. If the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. <u>Corrao</u>, 20 F.3d at 946.

5. Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity (RFC). <u>Jones</u>, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not disabled at any point in this process, the review process is terminated. <u>Corrao</u>, 20 F.3d at 946.

## IV.   <u>DISCUSSION</u>

The ALJ, following the five-step sequential evaluation process, found that Hagberg:  (1) had not engaged in substantial gainful activity since March 28, 2003 (Tr. at 17); (2) had severe impairments of a previous "head injury with chronic myofascial headaches, organic mental disorder (mild neurocognitive disorder) and depressive disorder not otherwise specified" (Tr. at 18-20); (3) did not have an impairment

or combination of impairments meeting or medically equaling a listed

impairment (Tr. at 20-21); (4) had the residual functional capacity

("RFC") "to perform the basic mental demands of unskilled work that is

simple and repetitive in nature and to perform work at all exertional

levels" (Tr. at 21-27); and (5) can perform his past relevant work as a

parking lot attendant and as a warehouse worker as those jobs

generally are performed (Tr. at 27-28).  The ALJ thus concluded that

Hagberg was not disabled through the date of the decision, March 3,

2008.  Tr. at 28.

Hagberg advances three principal arguments for reversal.  First,

he argues that the ALJ erred in improperly rejecting the opinion of his

treating physician, Glenn Guzman, M.D.  Hagberg's Br. (Court's Doc.

No. 18) at 2-6.  Second, he argues that the ALJ failed properly to

evaluate Hagberg's credibility.  Id. at 8-10.  And third, Hagberg argues

that the ALJ erred in relying upon flawed vocational expert testimony.

Id. at 7-8.

The Commissioner, in maintaining that substantial evidence

supports the ALJ's determination, first argues that the ALJ provided

specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Guzman's controverted opinion that Hagberg's functional limitations would preclude him from working.  Comm.'s Br. (Court's Doc. No. 21) at 8-11.  Second, the Commissioner argues that the ALJ gave clear and convincing reasons, supported by substantial evidence, for discrediting Hagberg's subjective complaints of disabling limitations.  Id. at 11-15.  And third, the Commissioner argues that the ALJ properly determined, based in part on the vocational expert's testimony, that Hagberg could perform his past unskilled work as a parking lot attendant and warehouse worker.  Id. at 15-18.

The Court must decide whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. For the reasons set forth below, the Court concludes that the Commissioner's decision is based on substantial evidence in the record and is free of reversible legal error.

A.    Consideration of Dr. Guzman's Opinion

Hagberg argues that the ALJ failed properly to reject Dr. Guzman's opinion.  Hagberg's Br. at 2-6.  First, Hagberg contends that

no other medical source rendered an opinion contrary to Dr. Guzman's opinion and that the ALJ, therefor, was required to provide "clear and convincing reasons" for rejecting it.  Id. at 4.  Second, he argues that the ALJ should have given greater weight to Dr. Guzman's opinion that Hagberg "has been unable to seek gainful employment" because of the functional limitations he has suffered as a result of his head injury.  Id. at 3 (citing some of Dr. Guzman's medical reports, Tr. at 241, 311, and 344).  Finally, Hagberg argues that the ALJ erred in giving more weight to the opinions of an examining physician and state agency physicians who did not examine or treat Hagberg than he gave to Dr. Guzman's opinion.  Id. at 4-6.

An ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing" reasons.  Where such an opinion is contradicted, however, an ALJ may reject it for "specific and legitimate" reasons supported by substantial evidence in the record.  Carmickle v. Commissioner of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citations omitted).

Here, the Court does not agree with Hagberg's contention that Dr.

Guzman's opinion was uncontradicted.  As reflected in the ALJ's written decision and in the record, Hagberg has a lengthy treatment history following the traumatic brain injury he sustained that gave rise to his claims for disability.  See, e.g., Tr. at 18-20, 23, 25-26 (ALJ summarizing Hagberg's medical history).  Some reports from medical sources expressly state that Hagberg "would benefit from some external structure and getting back to some vocational productivity.... [He] just needs some structure and to be supportively 'pushed' into increasing his activity level."  See, e.g., Tr. at 214 (Dr. Joseph McElhinny, Psy.D.,opining in April 2005 with respect to Hagberg's conditions and need for "vocational productivity"); Tr. at 20, 225-28 (examining physician Brian Schnitzer, M.D., opining in September 2005 that Hagberg "at present seemed capable of engaging in many work-related activities" after noting "[i]ntellectual functioning and general mentation seemed grossly okay" and "general physical conditioning seemed very good to excellent").[2]

---

[2]Even Dr. Guzman referenced in his records his attempts to assist Hagberg in getting established in vocational rehabilitation.  See, e.g., Tr. at 230, 232.

Because Dr. Guzman's opinion is contradicted in the record, the Court must determine whether the ALJ provided "specific and legitimate" reasons, supported by substantial evidence, for rejecting it. The Court concludes that he did.

First, the ALJ correctly noted that Dr. Guzman's opinion that Hagberg is "unable to work" is an opinion on an issue reserved to the Commissioner. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."); 20 C.F.R. § 404.1527(e)(3).  In rejecting Dr. Guzman's opinion, the ALJ identified it with specificity.  Tr. at 25 ("Dr. Guzman expressed his opinion at least four times in the case record that the claimant is not able to seek gainful employment.").  This reason for rejecting Dr. Guzman's opinion is legitimate because it is in accord with Ninth Circuit case law and the federal regulation cited supra.

Second, the ALJ noted that Dr. Guzman opined that Hagberg

-10-

could not work because of residual headaches and some cognitive deficits from head trauma.  The ALJ observed, however, that Dr. Guzman is a family practice physician and is not a specialist with respect to these types of impairments.  The ALJ further noted that specialists in these areas who have rendered opinions have not described Hagberg as being incapable of working nor have they suggested that he has any extensive restrictions.  Instead, the ALJ noted, the specialists found that Hagberg has mild cognitive impairment and mostly intact cognitive abilities.[3]  This reason for rejecting Dr. Guzman's opinion, too, is specific and refers directly to the specialists' conclusion that Hagberg's cognitive abilities are not as impaired as Dr. Guzman noted.  This reason proffered by the ALJ also is legitimate because specialists in the types of impairments Hagberg suffers have not stated, as has Dr. Guzman, that Hagberg is incapable of working.  Rather, they have said only that his cognitive impairments are largely mild.  Tr. at 25, 214, 256-58, 320-23.

_____

[3]See 20 C.F.R. § 404.1527(d)(5), noting that the SSA "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."

Third, the ALJ noted that although Hagberg's head trauma occurred in March 2003, Dr. Guzman did not start treating him until November 2004.  Tr. at 25.  The ALJ further noted that: (1)  Dr. Guzman's treatment of Hagberg consisted of refilling medications for chronic headaches and depression; (2) Dr. Guzman's opinion was not supported by the findings of examining physician Brian Schnitzner, M.D., whose examination was supported by specific medical signs and findings; and (3) Dr. Guzman appeared to act as an advocate for Hagberg in getting Social Security benefits and payments from the Washington Crime Victims' Program by writing letters on his behalf that state that he is unable to work.  Id.

The Court concludes that each of these reasons for rejecting Dr. Guzman's opinion are specific.  Each addresses a particular basis for scrutinizing the weight to afford Dr. Guzman's opinion or the support in the record for the opinion.  Also, except for the ALJ's statement that Dr. Guzman acted as Hagberg's advocate "in his quest to get Social Security disability benefits" and payments from the Washington Crime Victims' Program, the Court concludes that the ALJ's reasons were

legitimate.  As noted, the ALJ is charged with resolving any conflicts in the medical evidence and resolving ambiguities.  <u>Thomas</u>, 278 F.3d at 954.  Here, as noted, the ALJ resolved the conflicts between Dr. Guzman's opinions and those of the examining physician and specialists consulted with respect to Hagberg's conditions.

With respect to the ALJ's statement that Dr. Guzman acted as Hagberg's advocate, the Court respectfully disagrees.  No direct evidence of record supports the ALJ's statement.  It may be true that one reasonably might argue that the ALJ was permitted to draw an inference that Dr. Guzman acted as an advocate because Dr. Guzman stated in letters and medical records that Hagberg is "unable to work." The ALJ, however, did not specifically state that this was the basis for his conclusion that Dr. Guzman was Hagberg's advocate.  It is, therefor, somewhat unclear why the ALJ made this statement in his decision.

In any event, consistent with the foregoing discussion, the Court concludes that, even without the ALJ's finding that Dr. Guzman acted as Hagberg's advocate, the ALJ provided specific and legitimate reasons for rejecting Dr. Guzman's opinion.  The Court is not permitted

to reweigh the medical evidence and to arrive at a conclusion different from that of the ALJ.  Even in those instances in which "the evidence is susceptible to more than one rational interpretation," the Court must uphold the ALJ's interpretation.  <u>Sandgathe</u>, 108 F.3d 978, 980 (9th Cir. 1997).  The ALJ did not err.

     B.    <u>ALJ's Credibility Determinations</u>

Hagberg argues that the ALJ failed to state sufficient reasons, supported by the evidence, for finding that Hagberg's allegations with respect to his limitations were not credible. Hagberg's Br. at 8-10.  He also argues that the ALJ erred in his treatment of the lay testimony of Jessica Christensen, Hagberg's girlfriend, in that he failed to give any reason germane to her testimony for rejecting it.  Id. at 10.

With respect to Hagberg's credibility, when considering a claimant's subjective symptom testimony, an ALJ must perform a two-stage analysis: (1) the <u>Cotton</u> test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996) (referring to <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).  The <u>Cotton</u> test requires only that the claimant

(1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom.  Smolen, 80 F.3d at 1281-82 (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) and Cotton, 799 F.2d at 1407-08); 20 C.F.R. § 404.1529(a) and (b).

If the Cotton test is satisfied, and there is no evidence of malingering, then the ALJ can reject subjective testimony of the severity of the symptoms only by citing specific, clear, and convincing reasons for doing so.  Smolen, at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).  To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  Id. at 1284; Fair v. Bowen, 885 F.2d 597, 603-604 (9th Cir. 1989).  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  The ALJ

must also consider the factors set forth in SSR 88-13 including:

    A.    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    B.    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    C.    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    D.    Treatment, other than medication, for relief of pain;

    E.    Functional restrictions; and

    F.    The claimant's daily activities.

SSR 88-13, superseded in part on other grounds, 95-5P; see also 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ found objective medical evidence in the record to support some of Hagberg's limitations. Tr. at 18-20, 22. He also found that Hagberg's impairments could reasonably be expected to produce some degree of symptom. Id. And, the ALJ did not expressly find that Hagberg was malingering. Id. Thus, to reject Hagberg's subjective testimony about the severity of his symptoms, the ALJ had to cite specific, clear, and convincing reasons. Smolen, 80 F.3d 1283-84. The Court concludes that he did.

-16-

First, the ALJ pointed to inconsistencies between Hagberg's subjective allegations of markedly incapacitating cognitive deficits and headaches and the degree of treatment he received.  Tr. at 23.  The ALJ noted that, even though Hagberg received compensation and access to medical care for his head trauma from the Washington Crime Victims' Program, he has neither required nor received extensive rehabilitation for cognitive deficits.  According to the ALJ, the conditions for which Hagberg initially received treatment – left-sided facial paralysis and hearing loss in his left ear – essentially resolved and have not rendered him unable to work for twelve consecutive months.  Id.  Also, the ALJ noted, Hagberg's contact with neuropsychologists were in connection with processing claims for benefits and not for treatment.  Id.  Finally, the ALJ noted, Hagberg failed to follow any of the recommendations from medical service providers that he seek vocational rehabilitation services.  Id.

Second, the ALJ observed that Hagberg has little motivation to work because others tend to allow him not to work.  The ALJ stated that Hagberg "readily acknowledge[s] he is not motivated and he does

as little as possible ...." Id.  He adds that Hagberg "admits his girlfriend will do most every thing and he spends his time watching TV, he goes to his grandfather['s farm] to hang out and ride around, or he might go see friends."  Id.  While the ALJ acknowledges that Hagberg has chronic headaches, mild cognitive deficits, and depression, all of which produce symptoms and limitations considered when determining his RFC, the ALJ also noted that the evidence of record supports the conclusion that Hagberg nevertheless is "physically and mentally capable of being considerably more active on a daily basis."  Id.

Third, the ALJ noted that Hagberg has an incentive to claim to be disabled and that this, too, detracts from his credibility.  The ALJ observed that, at the time of the hearing, Hagberg received monthly benefits from the Washington Crime Victims' Program, together with medical care and medications, provided he remains unemployed.  Id. And the ALJ noted that Hagberg also held himself out as willing and available to work in receiving unemployment income, though the ALJ noted this was not the only factor he considered in determining Hagberg's credibility.  Id.

Fourth, the ALJ pointed to inconsistencies between Hagberg's allegations with respect to the frequency, intensity, and duration of his headache pain and his treatment history for that condition. The ALJ noted that Hagberg claimed daily pain since his head trauma at a level 8 or 9 on a 10-level scale that caused him to have to lie down a significant period each day. His treatment history, the ALJ observed, indicated otherwise. It showed that he saw Dr. Guzman about every six months for medication refills and adjustments. Hagberg did not claim at these appointments that he suffered from daily headaches at level 8 or 9 or indicate that they required him to lie down throughout the day, the ALJ noted, nor could Hagberg explain why he did not tell Dr. Guzman about the level of pain he had. Tr. at 23, 379-80.

Finally, the ALJ noted with respect to Hagberg's allegations of headache pain that "no physician advised him of a need to remain inactive or sleep during the day on a medical basis due to his headaches or cognitive deficits or any other basis." Tr. at 24. Instead, the ALJ observed, "Dr. Peterson, a neurologist, who recently evaluated his headaches suggested among other things that he engage in a good

aerobic program, to hold the line on the oral narcotics and avoid the
cannabis, and perhaps start some vocation, simply in part time and
then work into it."  Id.

All of the foregoing observations, which the Court finds to be
supported by the evidence of record, indicate that the ALJ applied
ordinary credibility evaluation techniques, which he was permitted to
do, in evaluating Hagberg's credibility.  <u>Smolen,</u> at 1283-84 (citing
<u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993)).  As noted, the Court
cannot impose its own interpretation of the evidence for the ALJ's
interpretation.  "Where the evidence is susceptible to more than one
rational interpretation, one of which supports the ALJ's decision, the
ALJ's conclusion must be upheld."  <u>Thomas</u>, 278 F.3d at 954 (citation
omitted).

Regarding consideration of Ms. Christensen's opinion, the Court
concludes that the ALJ did not err.  "Lay testimony as to a claimant's
symptoms is competent evidence which the [Commissioner] must take
into account, unless he expressly determines to disregard such
testimony, in which case 'he must give reasons that are germane to

each witness.'"  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)

(quoting Dodrill, 12 F.3d at 919).  One reason the ALJ may discount lay

testimony is because it conflicts with medical testimony.  Vincent v.

Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).  However, an ALJ may not

discount testimony from a lay witness based on a finding that the

claimant was not credible:

> That the ALJ dismissed all the lay witness testimony solely
> because he found the claimant was not credible suggests he
> may have been under the mistaken impression that lay
> witnesses can never make independent observations of the
> claimant's pain and other symptoms.

Dodrill, 12 F.3d at 919.

The ALJ properly considered Ms. Christensen's brief letter

written on Hagberg's behalf.  He thoroughly detailed the letter's

contents and determined not to give it significant weight.  Tr. at 27.  It

is true, as Hagberg argues, that the ALJ observed that Ms. Christensen

offered opinions that were the same or similar to Hagberg's, which he

had already found to be not credible.  It is equally true, however, that

he also noted that Ms. Christensen's opinions were inconsistent with

the observations and findings of most medical doctors who had

evaluated Hagberg, except Dr. Guzman, whose opinion was not given significant weight.  Id.  The Court concludes, based on the ALJ's observation that Ms. Christensen's opinion was inconsistent with most of the medical evidence of record, that the ALJ did not err in considering her opinion.

C.   Vocational Expert Testimony

Hagberg argues that the ALJ erred when he posed a flawed hypothetical question to the vocational expert.  Hagberg's Br. at 7-8. He argues that the ALJ's hypothetical question was flawed for two reasons.

First, the ALJ asked the vocational expert to consider an individual who was limited to unskilled work while also asking the vocational expert to consider the medical expert's testimony, which included other limitations stemming from Hagberg's psychological impairments.  The hypothetical, Hagberg argues, impermissibly required the vocational expert to weigh conflicts between the medical expert's limitations and the limitations that the ALJ ultimately found existed.  Id.  Second, Hagberg argues that the hypothetical question

failed to account for the effects of Hagberg's headaches, which Hagberg asserts are the primary cause of his disability claim.  Id.

"When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record."  Stewart v. Astrue, 561 F.3d 679, 684 (7th Cir. 2009); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ's reliance on vocational expert testimony proper where hypothetical contained all of the limitations that the ALJ found credible and supported in record); Dogsleep v. Astrue, 2008 WL 399444, *1 (9th Cir.) (unpublished) (ALJ not free to disregard properly supported limitations).

Here, in response to the ALJ's question, the vocational expert testified that Hagberg would not be able to perform his past skilled work.  Tr. at 415.  The vocational expert further testified, however, that Hagberg would be capable of performing his past unskilled work as a parking lot or warehouse worker, which he agreed are simple, repetitive, and unskilled jobs that require "no reports, note making, keeping records" or similar responsibilities.  Tr. at 416.

As noted supra, the ALJ properly did not give significant weight to Hagberg's allegations with respect to the severity of his headaches and the limitations they impose.  Thus, he was not required to include the limitations in his hypothetical question.  Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) (ALJ required to include in hypothetical question only those limitations supported by substantial evidence) (citing Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001)).

Also, the Court disagrees with Hagberg's position that the ALJ improperly asked the vocational expert to weigh conflicts between the medical expert's limitations and the limitations that the ALJ ultimately found existed.  The ALJ specifically asked the vocational expert to consider the medical expert's testimony regarding a neuropsychological assessment prepared by Joseph McElhinny, Psy.D. Tr. at 415-16 (referring to Dr. McElhinny's report, Tr. at 210-14).  Dr. Veraldi, the medical expert, testified that, based on Dr. McElhinny's report, it would be possible for Hagberg to perform simple, routine, non-complex work that involves one or two steps and is repetitive.  Tr.

at 396.  The ALJ asked the vocational expert to consider the medical

expert's testimony based on Dr. McElhinny's report.  The ALJ did not

ask the vocational expert to weigh medical evidence and did not err.

D.   Development of the Record

As a final matter, the Court notes that Hagberg argues that the

ALJ "deliberately fail[ed] to develop the record" when he denied

Hagberg's request for additional testimony from Dr. Donna Veraldi, the

medical expert who testified at the hearing, following Hagberg's

subsequent neuropsychological evaluation.  The Court disagrees.

A claimant bears the burden of proof of disability.  Bellamy v. Sec.

of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985)

(citations omitted).  The ALJ, however, has a duty to assist in

developing the record.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th

Cir. 2001); Armstrong v. Commr. of Soc. Sec. Admin., 160 F.3d 587,

589-90 (9th Cir. 1998); see also Sims v. Apfel, 530 U.S. 103, 108 (2000);

20 C.F.R. § 404.1512(d)-(f) (detailing the ALJ's duties to develop a

claimant's complete medical history before making a determination of

non-disability; to obtain additional information if reports from

claimant's medical sources contain ambiguities or are otherwise "inadequate for us to determine whether you are disabled;" and to order a consultative examination if unable to seek clarification from medical sources or if "the information we need is not readily available from the records of your medical treatment source").  The ALJ's duty is heightened where the claimant's ability to protect his or her interests may be adversely affected by a mental impairment.  See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

Here, after the hearing but before the ALJ issued his written decision, Hagberg underwent additional neuropsychological evaluation by Arthur Williams, Ph.D.  Tr. at 315-28.  During the mental status examination, Dr. Williams observed that Hagberg looked as though he was intoxicated and exhausted, which "likely affected his performance on the tests."  Tr. at 320.  According to Dr. Williams, Hagberg presented as irritable, but fully oriented.  He demonstrated normal speech content, generally intact memory, and adequate ability to follow three-step commands and conversations.  Id.  Testing revealed "a pattern of mild impairment," "borderline" auditory memory, and

"extremely low" visual and working memory.  Tr. at 323.  Dr. Williams

diagnosed a pain disorder associated with both psychological factors

and a general medical condition (which a medical doctor would have to

diagnose), an unspecified depressive disorder, alcohol abuse, cannabis

abuse, amphetamine abuse in the past, and a possible unspecified

cognitive disorder.  Tr. at 325.  Dr. Williams found that Hagberg had

some antisocial traits and some interpersonal and occupational

problems.  Id.  Dr. Williams noted that because of Hagberg's

intoxication, the tests results may not be valid, but nevertheless

recorded a global assessment of functioning score of 65.  Tr. at 325-26.

Dr. Williams's assessment was the second neuropsychological

evaluation of Hagberg contained in the record.  Although, as Dr.

Williams noted, Hagberg appeared intoxicated and exhausted during

the evaluation, he nevertheless tested at a level consistent with other

medical evidence in the record.  Also, it does not appear that lack of

development of the record prevented a determination on Hagberg's

claims for benefits.  Thus, the record was adequately developed and the

ALJ did not err.

V.      <u>CONCLUSION</u>

For the foregoing reasons, IT IS RECOMMENDED that Hagberg's motion (Court's Doc. No. 17) be DENIED, the Commissioner's motion (Court's Doc. No. 20) be GRANTED, and the ALJ's decision be affirmed.

IT IS ORDERED that the Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed within ten (10) days after receipt hereof, or objection is waived.

DATED this 10th day of September, 2009.


                                        */s/ Carolyn S. Ostby*
                                        Carolyn S. Ostby
                                        United States Magistrate Judge